UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                  File Nos. 1:07-CR-290
                                                    1:00-CR-159
JAMES SHYQUAN FLOWERS,

        Defendant.
_____/


Sentencing
and Supervised Release Violation Hearing

Before

THE HONORABLE ROBERT HOLMES BELL
United States District Judge
August 29, 2008


APPEARANCES


MATTHEW G. BORGULA          MICHAEL J. DUNN
Assistant U.S. Attorney      1000 Trust Building
P.O. Box 208                40 Pearl Street, NW
Grand Rapids, MI 49501       Grand Rapids, MI 49503
Attorney for Plaintiff       Attorney for Defendant



Also Present:  Anna Pakiela, U.S. Probation Officer


Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter

1                                        Grand Rapids, Michigan

2                                        August 29, 2008

3                                        2:50 p.m.

4                            -     -     -

5

6                  P R O C E E D I N G S

7

8          THE COURT:  We are here in the matter of <u>United</u>

9   <u>States v. James Shyquan Flowers</u>.  This is the Court's file --

10  we'll proceed first with the file to which a guilty plea was

11  tendered on April 14th, that of 1:07-CR-290.  In this matter

12  Mr. Borgula represents the United States Attorney's Office and

13  Mr. Dunn represents Mr. Flowers.

14          On report and recommendation that plea that was

15  tendered on the 14th of April was accepted by this Court on

16  May 12th, and the plea agreement was further accepted by this

17  Court.  A presentence report has been prepared in conjunction

18  with this sentencing, and in that presentence report there is

19  also a government's motion for a downward departure, and I

20  believe there is a brief in support of that motion at this

21  time in that case.

22          Looking at the presentence report as it presently

23  stands, is constituted, are there any corrections, deletions

24  or additions, Mr. Borgula?

25          MR. BORGULA:  No, Your Honor.

```
 1              THE COURT:  Mr. Dunn?

 2              MR. DUNN:  No, Your Honor.

 3              THE COURT:  Mr. Flowers, have you had a chance to

 4     review this presentence report in this matter?

 5              DEFENDANT FLOWERS:  Yes, sir.

 6              THE COURT:  Okay.  Are you satisfied with the

 7     representations that have been provided to you here by Mr.

 8     Dunn?

 9              DEFENDANT FLOWERS:  Yes, sir.

10              THE COURT:  Okay.  You have a motion for downward

11     departure, Mr. Borgula?

12              MR. BORGULA:  Yes, Your Honor.  We have filed a

13     motion and brief for a downward departure pursuant to

14     Sentencing Guideline 5K1.1.

15              As I stated in our brief, Your Honor, there are two

16     main reasons why we believe this defendant has provided

17     substantial assistance to the government.  The first is that

18     while he originally was uncooperative and, as the presentence

19     report indicates, obstructed justice early on in the

20     investigation, once he was arrested and brought within the

21     custody of the marshals, he immediately cooperated and he

22     provided truthful and credible information to DEA agents.

23     Specifically, he identified at least five individuals from

24     whom he had either purchased or witnessed the distribution and

25     sale of cocaine and crack cocaine.  Two of those individuals
```

1    were already known by the DEA and are presently still targets

2    of the investigation, so we felt that that was substantial

3    assistance with regard to those investigations, and it's

4    possible down the road, we anticipate we may have charges,

5    that he could get a Rule 35 should he either testify in a

6    grand jury or at a trial.

7              THE COURT:  Well, I always wonder when you say

8    substantial assistance, but there apparently is no

9    investigation and there's no indictment and there's nothing

10   pending.  I don't know how I can evaluate that.

11             MR. BORGULA:  There's no indictment pending,

12   although I can represent to the Court that there is an

13   investigation with regard to at least two of the individuals

14   of whom he spoke.  The other ones --

15             THE COURT:  Is it an investigation that is

16   proceeding and that you anticipate will result in an

17   indictment?

18             MR. BORGULA:  Yes.  I can't give a timing because I

19   don't have sufficient evidence yet to proceed to the grand

20   jury and present an indictment, but I anticipate based on my

21   experience that's where it's going.

22             The other issue, and this is why I've asked for the

23   brief to be sealed, I would rather not on the open record

24   indicate specifics, but it has to do with a shooting, a recent

25   shooting in the Grand Rapids area.

1          THE COURT:  You know, I've heard so much about that

2     that I don't think there's any surprises to anybody on this.

3     I think about every third file I have mentions Brick Yard

4     somewhere, so I don't think that's new.  I understand.

5          MR. BORGULA:  Okay.  So the Court is obviously aware

6     of what he did.  I put it in my brief.  I'm happy to elaborate

7     if the Court would like.

8          THE COURT:  Again, there are no names in the brief

9     or specific dates or anything like that, so I'm not concerned.

10         MR. BORGULA:  We're more worried about the specific

11    paper that he obtained and turned over.  We're not aware of

12    whether or not the targets know that that's been turned over

13    or not, and that's why I asked the Court for it to be sealed.

14    Other than that there was no other reason, Your Honor.

15         THE COURT:  Okay.  Thank you.

16         MR. BORGULA:  Thank you.

17         THE COURT:  Response, Mr. Dunn?

18         MR. DUNN:  Thank you very much, Your Honor.

19         I would support the U.S. attorney's request or the

20    assistant U.S. attorney's request.  He has more knowledge

21    about this than I do, and my client was very forthcoming when

22    he met with the U.S. attorney and the agents, sir.  Thank you.

23         THE COURT:  Well, I believe probably a one-year --

24    one-level downward departure is probably appropriate in this

25    case.  Again, I've heard so much about a couple of these

1    incidences that I'm a little bit immune to being surprised by

2    what I hear.  I suppose if testimony is given under oath in

3    subsequent proceedings, the government has the ability to come

4    forward with a 35(b) motion, at which point the Court can put

5    flesh on the allegations that are here.  So a one-level

6    downward departure this Court believes is sufficient.

7            So this matter by the rubric of the sentence

8    guidelines carries an adjusted offense level of 28 and

9    criminal history level of V, I believe.  Is that correct?

10           MR. DUNN:  That's correct, Your Honor.

11           THE COURT:  Your calculations, all right.

12           Would you wish to bring your client to the podium

13   and make remarks first and then have your client make remarks

14   in this matter?

15           MR. DUNN:  Thank you very much, Your Honor.

16           May it please the Court.  Mr. Flowers is a

17   complicated man.  He at times was pretty combative with

18   counsel, but at other times he was extraordinarily helpful.

19   He's a bright young man who's got himself in a world of

20   trouble who was already given a chance by this very Court.

21           I think it's important to open that way in my brief

22   comments to state that if the Court does look around, it can

23   see that there's absolutely nobody here.  That is probably Mr.

24   Flowers' fault, but maybe partially not.  While he was at the

25   jails, he never received a call, a letter, has no money in his

1   commissary, and has absolutely nobody to come visit him.  I'm
2   the only person and one other agent that came to visit him.

3           Maybe we do create our own circumstances in this
4   world.  Maybe because of his bad behavior he's driven everyone
5   away.  But maybe this is a human being that had such a
6   dysfunctional upbringing and such a broken upbringing that he
7   has no one to call mother, father, sister, spouse, friend, and
8   he's all alone.  I mean, most of the time when I talk to him,
9   I get a very -- inside some anger, Your Honor, I get a very,
10  very scared individual who doesn't frankly know any better,
11  who gets out of jail and is out for a short period of time and
12  tries a whole lot of things that he thought he could put
13  together properly while he was in prison and gets out there
14  and they fail like they do with the rest of us, but him, his
15  automatic default is criminal behavior.

16          We certainly have to follow a code of conduct in
17  this society, and so he's here in front of this Court on a
18  very serious charge.  But I understand this Court well knows
19  that there are backgrounds that cause people to go in a
20  direction, so I would hope that the Court would certainly
21  consider, as difficult of a man as he is, the upbringing and
22  the lack of support or guidance or counsel that he had
23  throughout his life and the Court would consider that in
24  sentencing, Your Honor.  Thank you.

25          THE COURT:  Thank you.  Thank you.  Well said.

1          Mr. Flowers, is there anything you would wish to

2     say?

3          DEFENDANT FLOWERS:  Yeah.  I'd like to apologize to

4     the Court and my PO, you know.  I let her down and, you know,

5     I ain't got no excuses.  I mean, I understand my lawyer.  He

6     trying to speak up for me, you know.  I ain't got no excuses.

7     I just -- I did a bad thing.  I should be punished, and I'm

8     sorry.

9          THE COURT:  How are we going to conduct ourselves in

10    the future?  What's your future going to be, Mr. Flowers?

11         DEFENDANT FLOWERS:  Your Honor, like my lawyer, my

12    lawyer asked me that.

13         THE COURT:  What do you want to -- what is your

14    hope?

15         DEFENDANT FLOWERS:  I'm scared.  I'm scared to make

16    any plans.  I try.  I mean, I didn't get out of prison and

17    plan on doing wrong.  I had all kind of goals and stuff.  This

18    ain't in my plan.  I -- I ain't planned this.  You know,

19    everything I did when I got out, it failed, so I mean I just

20    gave up.  I mean, my whole life, I mean, I been through a lot,

21    and so whenever something bad happen, I just give up, it seem

22    like, you know.

23         But I didn't plan on selling drugs.  You know, I got

24    uncles and aunts that died from drugs.  I mean, it ain't

25    something I like doing, you know.  I just -- I just got

 1   involved in something and it gonna cost me a lot of my life

 2   now, you know.  Like I said, I ain't got no excuses.  I just

 3   did something bad.

 4          THE COURT:  But I think you know that you had a

 5   probation officer here that really cared about you and wanted

 6   you to succeed.  You know that.

 7          DEFENDANT FLOWERS:  I --

 8          THE COURT:  And you know Magistrate Judge Carmody,

 9   she cared about you when you came in here every month, didn't

10   she?

11          DEFENDANT FLOWERS:  Yes, sir.

12          THE COURT:  And you know the lady that's running the

13   Moral Reconnaissance --

14          MS. PAKIELA:  Ravonne.

15          THE COURT:  Ravonne.  Ravonne cared about you,

16   didn't she?

17          DEFENDANT FLOWERS:  Yes, sir.

18          THE COURT:  She wanted you to be successful.  Thank

19   you.  I keep forgetting her name.  So there are people who

20   care about you being successful, aren't there?

21          DEFENDANT FLOWERS:  Yes, sir.

22          THE COURT:  Now, sometimes in life we don't get the

23   advantages that other people have and we have to look

24   sometimes for places and you have to look for the kind of

25   people that would care about you and would be able to help

1   you.  Where would you go if you were out on the street today

2   if you were looking for someone who would care for you and

3   help you?  Where could you find somebody like that?

4            DEFENDANT FLOWERS:  I ain't got nobody.

5            THE COURT:  No idea where you could go?

6            DEFENDANT FLOWERS:  I -- I had to beg my mom a lot

7   of times to just let me stay there, so --

8            THE COURT:  Just a minute, though.  Is there nowhere

9   in the city of Grand Rapids, for instance, that you could go

10  and find somebody that cared about you?

11           DEFENDANT FLOWERS:  I ain't from Grand Rapids.

12           THE COURT:  Where are you from?

13           DEFENDANT FLOWERS:  I'm from Alabama.

14           THE COURT:  No, no, but you're here in Grand

15  Rapids.  You were here in Grand Rapids when you were here on

16  supervised release.

17           DEFENDANT FLOWERS:  The majority of my family is

18  down South, though, Your Honor.

19           THE COURT:  But the majority of your family you said

20  isn't capable of really caring for you or loving you, so my

21  question is where would you go?

22           DEFENDANT FLOWERS:  Anna asked me that when I first

23  got out, did I want to -- you know, did I feel comfortable

24  staying here or going back home, you know.

25           THE COURT:  There are people.  There are people,

1  there are agencies, you know.  If you showed up at Mel

2  Trotter -- you know where Mel Trotter is.  If you showed up at

3  Mel Trotter and walked in the door and said, I need somebody

4  to help me, I got to have help, I have no question in my mind

5  at all but they would refer you to somebody immediately to sit

6  down with you, probably somebody that walked much of the same

7  road that you've walked.  You're not the only person in the

8  world that this has ever happened to.  You understand that?

9            DEFENDANT FLOWERS:  Yes, sir.

10           THE COURT:  I think there's sometimes a tendency for

11  us in our depression to think I'm the only one that ever had

12  this happen, but I don't think you are.  You've got a lot

13  going for you, but I think somehow you fell into the trap of

14  thinking I'm here all alone and nobody cares and there's

15  nobody that wants me, but I can think of two or three people

16  here that were very concerned about you.  I've got all kinds

17  of documents here from even court people who were concerned

18  about your being successful.

19           So I don't think you're all by yourself in this.

20  You may perceive yourself to be, but I don't think you are.

21  And I think what you want to do in the next several years as

22  you get your head together and as you figure out how you're

23  going to live the rest of your life is to figure out, Where do

24  I go?

25           I want to give you two places to go and I'm going to

1    ask you to pick which one would be -- would have people that

2    really care, could really care about you.  Would it be at a

3    tavern or a church?  Where are you more apt to find people

4    that would care about you?

5              DEFENDANT FLOWERS:  I don't know what a tavern is.

6              THE COURT:  A bar.

7              DEFENDANT FLOWERS:  Oh, a church.

8              THE COURT:  A church.  Why would you want to -- why

9    would the church be the one?  And you made the right

10   selection, but why would that be?

11             DEFENDANT FLOWERS:  Well, a church is like a family

12   and they show you love.

13             THE COURT:  Exactly.  Exactly.  And I'm not talking

14   about a denomination; I'm just talking about a church.  So you

15   have to -- you kind of got to find it.  You kind of got to

16   find it, and I can't tell you where you have to go and I can't

17   tell you how you have to do it, but you've got to find it on

18   your own, because you're 28 years old.  Yeah.

19             Mr. Borgula, anything you wish to add?

20             MR. BORGULA:  Nothing to add, Your Honor.

21             THE COURT:  With the adjusted offense level and the

22   criminal history level that I've articulated here and the

23   requirement of this Court to review Section 3553(a) of the

24   federal sentencing statute, the Court has to look at the

25   history and characteristics of Mr. Flowers who, while a very

1    likeable individual, has committed a serious offense and has

2    committed it repetitively and under situations where people

3    were in a position to provide some help to him.  And

4    therefore, the Court finds that the lack of respect for law

5    must be addressed in a promotion and a deterrence and

6    protection of the public.  The opportunity for rehabilitation

7    the Court wants to provide to Mr. Flowers with the

8    understanding, of course, that the ability to learn from this

9    programming, the ability to receive the kind of guidance that

10   he needs is really up to you, Mr. Flowers.

11          The sentence of this Court will be that you receive

12   a sentence of 144 months or 12 years in the custody of the

13   Federal Bureau of Prisons with the following three

14   conditions.  One is that you receive substance abuse

15   evaluation and treatment.  That evaluation will be critical to

16   determine what level of treatment that you receive.

17          Secondly, that you receive vocational/educational

18   training opportunity.  I want you to get a skill set.  You're

19   intelligent enough that I'm confident that you can learn a

20   skill, learn a trade in the prison system that you can take

21   with you.  But you've got to go to the classes.  You've got to

22   make that intentional desire to say I want to learn something

23   that I can make money from.  You're a strong guy.

24          The third issue, I want you to receive medical care

25   for the symptoms that are related to prior head injuries.  I

1    can't quite get my arms -- you have one eye that you're blind

2    in; is that correct?  Your right eye or left eye, I can't

3    remember which.

4                    DEFENDANT FLOWERS:  Left.

5                    THE COURT:  Left eye.  And then you apparently have

6    lots of headaches and difficulties with that.  So I'm going to

7    ask the Bureau of Prisons to review that and determine what

8    kind of medication and whether there's some operative

9    procedures which would relieve you of that.  We'll see what we

10   can do about that.

11                   Supervised release will thereafter be five years

12   with the standard conditions of reporting and remaining

13   law-abiding, with drug testing, obviously, and with no drugs,

14   no alcohol, and no guns.  You understand that?

15                   DEFENDANT FLOWERS:  Yes, sir.

16                   THE COURT:  Those don't mix.  I don't want you

17   anywhere near any of those.

18                   I want you to reside only in a facility approved by

19   the probation officer.  Now, that means not only the facility

20   when you first are eligible for release, and most likely it

21   will be a halfway house in this case, but throughout the

22   entire five years I want the probation officer to help you

23   make the kind of decisions where you can live in an

24   environment that's the most productive for you and will tell

25   you when you're being in an unproductive environment.  I want

 1  you gainfully employed or looking for work.  No association

 2  with anyone using or possessing drugs.

 3          DEFENDANT FLOWERS:  No, sir.

 4          THE COURT:  Got to pick different friends.  Got to

 5  go places where you can find the right kind of people that can

 6  be the right kind of influence on you, and you're going to

 7  have to be choosy.  Sometimes you may have to be by yourself

 8  for awhile till you find those kind of people.

 9          Mandatory special assessment of $100 will be imposed

10  in this matter.

11          Do you have a motion as it pertains to the

12  indictment, Mr. Borgula?

13          MR. BORGULA:  There was just one count, Your Honor,

14  so there's no counts to be dismissed.

15          THE COURT:  I have this as a superseding, but you

16  have it as a regular indictment?

17          MR. BORGULA:  I have it as a regular indictment.  I

18  don't recall a superseding.

19          THE COURT:  Okay.  All right.  Any legal objection

20  to the sentence imposed, Mr. Borgula?

21          MR. BORGULA:  No, Your Honor, thank you.

22          THE COURT:  Any legal objection to the sentence

23  imposed, Mr. Dunn?

24          MR. DUNN:  No, Your Honor.

25          THE COURT:  You have a limited right of appeal from

1    the nature of the plea agreement that was set forth

2    previously.  You have ten days in which to file that limited

3    appeal.  Those forms have been provided to you.  You will be

4    remanded to the custody of the marshal for placement at the

5    appropriate facility, having in mind these specific

6    recommendations and with that credit given for the time that

7    you have served in this matter.

8              Now, I also have here a supervised release violation

9    that is before this Court.  I believe the date today has been

10   set for the time to proceed on that supervised release

11   violation.  Are you ready to proceed on that matter on behalf

12   of the government?

13             MR. BORGULA:  Yes, Your Honor.

14             THE COURT:  Okay.  Mr. Dunn, are you ready to

15   proceed on that matter?

16             MR. DUNN:  Yes, Your Honor.  It's my understanding

17   my client is going to admit to the violations, sir.

18             THE COURT:  Okay.  If you'll raise your right hand.

19   Do you swear to tell the truth, the whole truth, and nothing

20   but the truth in this matter, so help you God?

21             DEFENDANT FLOWERS: Yes, sir.

22             THE COURT:  Again, is there anything mentally or

23   physically that would keep you from being able to participate

24   in these proceedings of violation of supervised release?

25             DEFENDANT FLOWERS:  No, sir.

1              THE COURT:  Have you been advised of these written

2    charges of violation of supervised release and have you had an

3    ample opportunity to discuss these matters with your attorney,

4    Mr. Dunn?

5              DEFENDANT FLOWERS:  Yes, I have, sir.

6              THE COURT:  Do you understand the right to be

7    represented by him?

8              DEFENDANT FLOWERS:  Yes, sir.

9              THE COURT:  It's my understanding you are satisfied

10   with his representations of you?

11             DEFENDANT FLOWERS:  Yes, sir.

12             THE COURT:  What pleas would you wish to enter to

13   these violations?

14             DEFENDANT FLOWERS:  Guilty.

15             THE COURT:  Do you understand that you are entitled

16   to have a hearing in this matter today to determine if there

17   is sufficient evidence to convict you of violating these terms

18   and conditions of supervised release?

19             DEFENDANT FLOWERS:  Yes, sir.

20             THE COURT:  You have a right to confront witnesses,

21   the right to call witnesses on your own behalf and compel

22   their attendance, and the right to testify on your own behalf

23   at a hearing.

24             DEFENDANT FLOWERS:  Yes, sir.

25             THE COURT:  Do you understand no one could comment

1   if you did not, nor could anyone -- could the government ever

2   call you as a witness against yourself?

3          DEFENDANT FLOWERS:  I didn't --

4          THE COURT:  You understand the government could

5   never call you as a witness against yourself?

6          DEFENDANT FLOWERS:  Oh, yes, sir.

7          THE COURT:  Has anyone threatened you or coerced you

8   as it pertains to entering guilty pleas to these violations of

9   supervised release?

10         DEFENDANT FLOWERS:  No, sir.

11         THE COURT:  Anyone made any promises of leniency or

12  prediction of what the sentence would be --

13         DEFENDANT FLOWERS:  No, sir.

14         THE COURT:  -- if your plea were accepted?  Tell me

15  what happened here that you believe makes you guilty of

16  violation of supervised release.

17         DEFENDANT FLOWERS:  I did everything that it said.

18         THE COURT:  Well, tell me what you did.

19         DEFENDANT FLOWERS:  I committed another crime.

20         THE COURT:  Tell me what you did.

21         DEFENDANT FLOWERS:  I sold drugs.

22         THE COURT:  When?

23         DEFENDANT FLOWERS:  September 23rd, 2007.

24         THE COURT:  Where?

25         DEFENDANT FLOWERS:  In Grand Rapids at 310

1    Lexington.

2              THE COURT:  What kind of drugs did you sell?

3              DEFENDANT FLOWERS:  Crack cocaine.

4              THE COURT:  Where did you get the drugs?

5              DEFENDANT FLOWERS:  From different people, like a

6    lot of people, different people.

7              THE COURT:  What was your purpose in selling?

8              DEFENDANT FLOWERS:  The purpose of selling, for

9    money and use.

10             THE COURT:  Did you intend to make a profit on the

11   sale of those drugs from what you paid for them?

12             DEFENDANT FLOWERS:  Yes, sir.

13             THE COURT:  Did you know that was unlawful?

14             DEFENDANT FLOWERS:  Yes, sir, I knew.

15             THE COURT:  Now, there's an allegation here that you

16   had over $1,600 on your person at the time you were arrested?

17             DEFENDANT FLOWERS:  Yes, sir.

18             THE COURT:  Where did that money come from?

19             DEFENDANT FLOWERS:  Drugs.

20             THE COURT:  You understand that at the time you had

21   that $1,600 on you that you still owed approximately $12,000

22   in restitution on your underlying charge?

23             DEFENDANT FLOWERS:  Yes, sir.

24             THE COURT:  And that you were in arrears; that is,

25   you were behind on your payment of restitution?

1              DEFENDANT FLOWERS:  Yes, sir.

2              THE COURT:  Do you understand the allegation that

3    alleges here that you did fail to deal honestly and

4    forthrightly with the supervised release officer or the

5    probation officer?

6              DEFENDANT FLOWERS:  Yes, I do.

7              THE COURT:  What did you do that was dishonest?

8              DEFENDANT FLOWERS:  I lied to her.

9              THE COURT:  How did you lie to her?

10             DEFENDANT FLOWERS:  I told her I was working.  I had

11   a dirty urinalysis.  I drunk alcohol when I wasn't supposed

12   to.  I hung around with -- I hung around with people I

13   shouldn't.  I did everything I wasn't supposed to do.

14             THE COURT:  Did you have a home computer?

15             DEFENDANT FLOWERS:  Yes, sir.

16             THE COURT:  Were you doing anything unlawful with

17   that?

18             DEFENDANT FLOWERS:  Yes, sir.

19             THE COURT:  What were you doing?

20             DEFENDANT FLOWERS:  Making check stubs.

21             THE COURT:  What was that purpose?

22             DEFENDANT FLOWERS:  To make check stubs so I can

23   give to my PO.

24             THE COURT:  Any additional questions which should be

25   asked to establish the factual basis for this plea?

 1          MR. BORGULA:  No, Your Honor.  The government's

 2    satisfied.

 3          THE COURT:  Mr. Dunn?

 4          MR. DUNN:  No, Your Honor.

 5          THE COURT:  I find the plea is freely and

 6    voluntarily entered without promises of leniency or coercion.

 7    I find the charges are factually accurate.  The defendant is

 8    actually guilty and hereby stands convicted.

 9          Are there remarks you'd wish to make on behalf of

10    your client at this time in this matter?

11          MR. DUNN:  Your Honor, I would only ask the Court,

12    since the Court has such wide latitude in sentencing here with

13    regard to concurrent, consecutive, or partially concurrent and

14    consecutive, I would just hope the Court would consider my

15    previous comments with regards to Mr. Flowers.  Thank you.

16          THE COURT:  Thank you.

17          Any remarks you would wish to make, Mr. Flowers?

18          DEFENDANT FLOWERS:  No, I said enough, sir.

19          THE COURT:  Does the government have anything it

20    wishes to say in this matter?

21          MR. BORGULA:  No, Your Honor, thank you.

22          THE COURT:  Based upon the defendant's violation of

23    supervised release as he has indicated here under oath

24    pursuant to the guilty plea, the Court revokes his supervised

25    release conditions, finding that the nature and circumstances

1     of this subsequent criminal behavior and the high risk of

2     continued behavior and the complete refusal to comply with

3     these conditions of supervised release warrants its

4     revocation.

5           It is the sentence of this Court pursuant to 18

6     United States Code 3583(e)(3) that Mr. Flowers is hereby

7     committed to the custody of the Federal Bureau of Prisons for

8     a term of 36 months with no term of supervised release to

9     follow.  Specifically, this Court would require that this

10    sentence be served concurrently with the case numbered

11    1:07-CR-290.

12          You have a right of appeal.  You have ten days

13    within which to file that appeal as to this supervised release

14    violation in this matter.

15          Anything else that we should place on the record as

16    it pertains to these two cases at this time, Mr. Borgula?

17          MR. BORGULA:  Not from the government, Your Honor,

18    thank you.

19          THE COURT:  Mr. Dunn?

20          MR. DUNN:  Nothing, Your Honor.  Thank you, sir.

21          THE COURT:  That's all.  Thank you, Mr. Dunn, for

22    your able representation throughout this matter.

23          MR. DUNN:  Thank you very much, Your Honor.

24          (Proceedings concluded at 3:17 p.m.)

25

CERTIFICATE OF REPORTER

I, Kevin W. Gaugier, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the proceedings had in the within-entitled and numbered cause on the date hereinbefore set forth.

I do further certify that the foregoing transcript was prepared by me.

/s/  Kevin W. Gaugier

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter
110 Michigan N.W.
622 Federal Building
Grand Rapids, MI 49503